UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

T.M.-J.,

Plaintiff,

v.

VALLEJO CITY UNIFIED SCHOOL DISTRICT and FAIRFIELD SUISUN UNIFIED SCHOOL DISTRICT,

Defendants.

No. 2:23-cv-02141-TLN-SCR

**ORDER**

This matter is before the Court on Defendant Vallejo City Unified School District's ("VCUSD"[1]) Motion to Dismiss. (ECF No. 15.) Plaintiff T.M.-J. has filed an opposition. (ECF No. 16.) VCUSD has filed a reply. (ECF No. 18.) For the reasons set forth below, the Court GRANTS VCUSD's motion.

///

///

///

///

[1] Defendant Fairfield Suisun Unified School District ("FSUSD") is also a named Defendant in this action. For ease of reference in referring to Plaintiff's time spent in both school districts, the Court will refer to each school district by its own acronym. The Court will refer to VCUSD and FSUSD collectively as "Defendants."

## I. Factual and Procedural Background

This case arises from Plaintiff's time spent as a student at VCUSD from the 2013-2014 school year through the 2017-2018 school year. (*See* ECF No. 1.) In short, Plaintiff alleges VCUSD has unlawfully and discriminatorily denied him a free appropriate public education ("FAPE") as guaranteed by the Individuals with Disabilities Education Act ("IDEA") and § 504 of the Rehabilitation Act. (*Id.*)

As of the filing of the Complaint, Plaintiff was 18 years old, in twelfth grade, and eligible for special education. (*Id.* at 9.) During the 2012-2013 school year through the 2017-2018 school year, Plaintiff completed first through sixth grade at Wardlaw Elementary School and Hogan Middle School, both schools within VCUSD.[2] (*Id.* at 9–24.) Plaintiff alleges his individualized education plans ("IEPs") and report cards reflected information about his significant academic difficulties, especially in all areas of reading, but Defendants asserted Plaintiff's deficits were due to attentional issues and behaviors related to his diagnosis of attention deficit hyperactivity disorder ("ADHD"). (*Id.* at 9.) Plaintiffs contend these "misrepresentations" resulted in his parents' lack of knowledge of the true reason for his academic deficits — a significant learning disability. (*Id.*)

Plaintiff alleges that "Defendants' failure to execute proven remedies to ensure [Plaintiff], a student with a disability, has equal access to literacy is evidenced by the assessment data collected by" VCUSD and FSUSD, Plaintiff's progress on his IEP goals, report cards, and, more broadly, the documentation by the State of California via the California Assessment of Student Performance and Progress ("CAASPP") and the School Dashboard. (*Id.* at 8.) Plaintiff sets forth specific allegations with respect to each school year. (*Id.* at 10–23.) In the summer of 2018, Plaintiff and his family relocated to Fairfield. (*Id.* at 23.)

On April 28, 2023, Plaintiff filed a Due Process Complaint with the California Office of Administrative Hearings ("OAH"). (*Id.* at 35.) Plaintiff alleged VCUSD denied Plaintiff a FAPE

---

[2] Although Plaintiff alleges VCUSD unlawfully discriminated against him starting in the 2013-2014 school year, Plaintiff sets forth allegations starting with the 2012-2013 school year. As Plaintiff's claims are only with respect to the 2013-2014 through 2017-2018 school years, the Court will only summarize Plaintiffs allegations starting with the 2013-2014 school year.

for the 2013 to 2014 through 2017 to 2018 school years, including extended school years, by:

> failing to offer or provide an evidence-based structured literacy program; failing to provide appropriate goals in all areas of need; failing to offer adequate and appropriate specialized academic instruction to address deficits in math, written expression, and executive functioning; failing to offer assistive technology devices, software, and applications; failing to offer adequate accommodations; failing to offer a behavior support plan and behavior services; and failing to offer extended school year services.

(*Id.* at 5.) On June 30, 2023, Administrative Law Judge ("ALJ") Cole Dalton issued an order granting Defendants' motion to dismiss portions of the complaint. (*Id.* at 35.) The ALJ determined the "allegations [were] limited by the two-year statute of limitations" and "[a]ll claims preceding April 28, 2021 [were] time barred and dismissed." (*Id.*) The ALJ ordered, among other things, the motion to dismiss VCUSD as a party was granted and the matter would proceed only against FSUSD. (*Id.* at 35–36.) Plaintiff appeals the ALJ's order pertaining to the dismissal of issues against VCUSD preceding April 28, 2021. (*Id.* at 36.)

Plaintiff filed the Complaint on September 28, 2023. (*See id.*) VCUSD filed the instant motion to dismiss on January 26, 2024. (ECF No. 15-1.) Plaintiff filed an opposition on February 7, 2024. (ECF No. 16). VCUSD filed a reply on February 20, 2024. (ECF No. 18.)

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

///

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

*Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. Analysis

Defendant argues the statute of limitations bars Plaintiff's claims under the Individual with Disabilities in Education Act ("IDEA") and § 504 of the Rehabilitation Act. (ECF No. 15-1 at 4.) The Court will address each claim in turn, after reviewing the level of deference to be afforded the ALJ's decision.

### A. Level of Deference to the ALJ's Decision

In opposition to the instant motion, Plaintiff contends that little deference should be afforded to the ALJ's order, as the ALJ "failed to cite to or implement the applicable law," including *Avila* and its implementing cases. (ECF No. 16 at 17 (citing *Avila v. Spokane Sch. Dist. 81*, 852 F.3d 936, 941–44 (9th Cir. 2017)).) Plaintiff also contends "the ALJ never addressed *why* parents' attendance at IEP meetings, review of records, and observation of lack of progress meant that Parents knew or should have known of a denial of FAPE under the IDEA prior to the 2021-2022 school year," and that prior to this year, Plaintiff's parents relied upon VCUSD's "explicit and repeated statements that [Plaintiff's] lack of progress was due to his deficits in attention, focus, and other ADHD-related symptoms." (*Id.* at 18 (emphasis in original).) In reply, VCUSD notes that Plaintiff's reliance on *N.N.* for the proposition that little deference should be given to the ALJ's decision is flawed. (ECF No. 18 at 6 n.4 (*N.N. v. Mountain View-Los Altos Union High School Dist.*, No. 20-cv-08010-VKD, 2022 WL 3109588 (N.D. Cal. Aug. 4, 2022) ("*N.N.*").)

"[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993). The Ninth Circuit has stated that courts are to "treat a hearing officer's findings as

'thorough and careful' when the officer participates in the questioning of witnesses and writes a decision 'contain[ing] a complete factual background as well as a discrete analysis supporting the ultimate conclusions." *R.B., ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 942 (9th Cir. 2007 (citing *Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006).) "But neither the duration of the hearing, nor the ALJ's active involvement, nor the length of the ALJ's opinion can ensure that the ALJ was 'thorough and careful.'" *M.C. by and through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017). "[B]lind deference is not appropriate," but rather "the district judge must actually examine the record to determine whether it supports the ALJ's decision." (*Id.* at 1194 n.1.)

Here, it appears from VCUSD's reply brief that no administrative hearing was held, but rather Plaintiff affirmatively pleaded all the facts to establish his claims and the ALJ's decision was made on the briefing. (ECF No. 18 at 6 n.4.) Plaintiff does not provide any information to the contrary. (*See* ECF No. 16.) To the extent Plaintiff relies on *N.N.* for the proposition that the ALJ's decision should not be afforded deference (*see* ECF No. 16 at 10 (citing *N.N.*, 2022 WL 3109588), VCUSD is correct that the circumstances of both cases are different. (ECF No. 18 at 6 n.4.) In *N.N.*, the facts were provided at an administrative hearing but in the instant matter Plaintiff has affirmatively pleaded all facts.

Further, the Court finds that even though the ALJ did not explicitly state the Ninth Circuit's articulation of the statute of limitations in *Avila*, the ALJ did apply the correct legal standard of the "discovery rule." (*See* ECF No. 1-5 at 3.)

Finally, the ALJ's written decision (at approximately 10 pages) is not particularly lengthy. The ALJ's decision seems to be solely based on the allegations in Plaintiff's complaint and does not refer to any witnesses. While the ALJ did address all the relevant issues, he only went through some of the facts in Plaintiff's complaint and largely provided a summary of the allegations. Accordingly, the ALJ's findings do not warrant the same deference afforded to "thorough and careful" findings.

///

///

B. <u>Claim One: Violation of the IDEA</u>

VCUSD argues the OAH ALJ correctly determined Plaintiff's allegations were barred by the statute of limitations as to VCUSD. (ECF No. 15-1 at 5–15.) VCUSD argues: (1) Plaintiff's argument that his parents did not know or have reason to know of the facts underlying the basis for the Due Process Complaint until three years after leaving VCUSD is not supported and directly contradicted by the evidence; (2) Plaintiff's argument that VCUSD's "misrepresentations" kept his parents from being able to file a Due Process Complaint is meritless; and (3) Plaintiff does not cite to any authority to support his opinion the ALJ should have considered the issue in connection with an evidentiary hearing. (*Id.*) The Court will consider each of these arguments in turn.

*i. Whether the Requirements of the IDEA and California Education Code Have Been Met*

The IDEA is intended "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). "A FAPE is defined as an education that is provided at public expense, meets the standards of the state educational agency, and is in conformity with the student's IEP." *Baquerizo v. Garden Grove Unified Sch. Dist.*, 826 F.3d 1179, 1184 (9th Cir. 2016) (citing 20 U.S.C. § 1401(9).) If a parent or agency initiates a request for an initial evaluation to determine if the child has a disability, the local educational agency must "conduct a full and individual initial evaluation" to determine whether the child has a disability and the child's educational needs. 20 U.S.C. § 1414(a)(1)(A)–(C). If the evaluation determines that a child has a disability, a team including a local educational agency representative, teachers, parents, and, sometimes the child, formulates an IEP. *Id.*, § 1414(d)(1)(B). The local educational agency is required to conduct a reevaluation if it "determines that the educational or related services needs, including improved academic achievement and functional performance, of the child warrant a reevaluation," or the child's parents or teacher request a reevaluation. *Id.*, § 1414(a)(2)(A). The IDEA allows parents to file a due process complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [FAPE] to such child." *Id.*, §

1415(b)(6)(A). The state educational agency or local educational agency conducts an impartial due process hearing.[3] *Id.*, § 1415(f)(1)(A). The IDEA provides for judicial review in state courts and federal district courts if a party disagrees with the administrative findings and decision. *Id.*, § 1415(i)(2)(A).

The IDEA's statute of limitations provides:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency *knew or should have known about the alleged action that forms the basis of the complaint*, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

20 U.S.C. § 1415(f)(3)(C) ("§ 1415(f)(3)(C)") (emphasis added). The California Education Code similarly provides that a request for a due process hearing "shall be filed within two years from the date the party initiating the request *knew or had reason to know of the facts underlying the basis for the request*." Cal. Educ. Code § 56505(l) (emphasis added). The Ninth Circuit has clarified that the IDEA's statute of limitations articulated in § 1415(f)(3)(C) requires courts to apply the discovery rule. *Avila*, 852 F.3d at 941–44. The Ninth Circuit held that "the IDEA's statute of limitations requires courts to apply the discovery rule without limiting redressability to the two-year period that precedes the date when 'the parent or agency knew or should have known about the alleged action that forms the basis of the complaint.'" *Id.* at 944 (citing § 1415(f)(3)(C)) (finding the district court erred in barring Avilas' claims arising two years prior to the date the Avilas filed their due process complaint and remanding to the district court to address when the Avilas "knew or should have known about the alleged action[s] that form[ ] the basis of the complaint").

VCUSD argues "Plaintiff's Complaint is replete with allegations that establish his parents knew, or certainly should have known, of the facts underlying the basis for the Due Process Complaint" and the Complaint "makes it very clear that Plaintiff's parents were kept apprised and knew of his academic deficits and regressions throughout the entirety of the time he attended VCUSD." (*Id.* at 6, 9.) VCUSD notes that while it "strongly disputes Plaintiff's claims and

---

[3] In California, the Office of Administration Hearings ("OAH") conducts these due process hearings.

contends it fulfilled all obligations with respect to Plaintiff's education, there is no question that Plaintiff's parents had all of the information needed to claim otherwise if they believed he was being denied a FAPE." (*Id.* at 9.) VCUSD notes the "ALJ considered the facts alleged in each school year" and correctly ruled based on the allegations of Plaintiff's Due Process Complaint that his claims were barred by the statute of limitations. (*Id.* at 11–12.)

In opposition, Plaintiff contends that it was not until Plaintiff's mother "worked with him intensely in a one-to-one setting during independent study" and "was able to control for his attentional issues," that she found he was struggling to read. (ECF No. 16 at 14.) Plaintiff notes that at this juncture his parents "became suspicious that the years-long account that [his] deficits were solely related to his ADHD-related attention issues was potentially untrue, and ultimately requested he be assessed for dyslexia." (ECF No. 16 at 14.) Plaintiff cites to several district court cases for the assertion that "a parent's awareness of underlying facts, such as receipt of reports and participation in the IEP process, does *not* demonstrate that their child required further assessment for other learning disabilities because some issues require specialized expertise a parent cannot be expected to have." (*Id.* at 13 (citing *N.N.*, 2022 WL 3109588; *Jessica E. v. Compton Unified Sch. Dist.*, No. CV16-04356-BRO (MRWx), 2017 WL 2864945 (C.D. Cal. May 2, 2017) ("*Jessica E.*"); *J.R. by & through Perez v. Ventura Unified Sch. Dist.*, 668 F. Supp. 3d 1054 (C.D. Cal. 2023) ("*J.R.*").)

In reply, VCUSD asserts that Plaintiff is effectively arguing that because VCUSD (and FSUSD) did not diagnose Plaintiff with dyslexia, dysgraphia, or dyscalculia, his parents could not have known of the facts underlying their Due Process Complaint. (ECF No. 18 at 3.) VCUSD contends "Plaintiff's parents did not learn any 'new facts' necessary to learn the basis for the request for [the] due process hearing by doing independent study that they did not already know during the time he was at VCUSD." (*Id.* at 4.) VCUSD notes that Plaintiff's parents concede they were able to understand VCUSD denied Plaintiff a FAPE by working with him on schoolwork, which did not require them to be "experts." (*Id.*) VCUSD argues Plaintiff's parents' "failure to do this before cannot negate their express knowledge[,] as shown by their own allegations, of all necessary facts." (*Id.*) VCUSD also notes that the cases upon which Plaintiff

relies are inapposite to the instant case. (*Id.* at 6–8.)

Here, the Court finds that Plaintiff knew or should have had reason to know about the facts forming the basis of his Due Process Complaint in each of the school years between 2013 to 2014 through 2017 to 2018 while Plaintiff was at VCUSD. There were sufficient facts in every school year for Plaintiff's parents to observe that he was not making progress and he had demonstrated difficulties *specifically in reading and language*. In some years, Plaintiff even demonstrated regression. Plaintiff's own factual allegations in the Complaint make this clear.

With respect to the 2013 to 2014 school year (second grade), Plaintiff's report card indicated he had deficits in all areas of reading, writing strategies and applications, language conventions, and mathematics. (ECF No. 1 at 10.) In May 2014, VCUSD assessed Plaintiff and found him eligible for special education services under the qualifying category of "other health impairment." (*Id.*) VCUSD's 2014 Psychoeducational Assessment Report indicated deficits in phonological awareness and decoding skills, which *were significantly impacted by his difficulty segmenting words*. (*Id.*) Plaintiff's teacher expressed he had difficulty with phonemic awareness, reading fluency, and high frequency words, and *a computer-generated report indicated follow-up was needed in the area of a specific learning disability*. (*Id.*) The same report was produced for Plaintiff's parents. (*Id.*) At an IEP team meeting on May 30, 2014, the IEP noted his present level of performance did not provide grade level equivalencies but stated that *Plaintiff was below grade level*. (*Id.* at 11.) The IEP provided goals in the areas of reading fluency, math, written expression, and self-regulation. (*Id.*) VCUSD offered Plaintiff thirty minutes of specialized academic instruction ("SAI") four times per day. (*Id.*) Plaintiff had not made positive growth. (*Id.* at 12.) Plaintiff required extended school year services. (*Id.*)

With respect to the 2014 to 2015 school year (third grade), Plaintiff's report card noted he continued to be *below grade level in all areas of reading*. (*Id.* at 13.) The comments noted he began the school year at a "pre-primer" level in reading and ended the school year at the same level. (*Id.*) The report card also noted Plaintiff was "unable to accurately and independently solve word problems" and that his *reading "fluency [was] below proficiency*." (*Id.* (emphasis added).) At the annual IEP team meeting on February 27, 2015, the baseline of the reading

fluency goal noted Plaintiff could read 50 first-grade words in one minute, which would mean his reading skills were at approximately a first-grade level (in third grade). (*Id.*) Plaintiff has not made positive academic growth and *his testing showed a regression in the area of reading*. (*Id.* at 14.) Plaintiff required extended school year services. (*Id.*)

With respect to the 2015 to 2016 school year (fourth grade), at the annual IEP team meeting on February 26, 2016, the IEP noted Plaintiff had not met any of his goals from the preceding IEP, *he was still reading at a mid-first-grade level*, and he made no progress over the prior year. (*Id.* at 15.) Plaintiff had not made positive growth since first grade and his testing showed regression. (*Id.* at 16.) Plaintiff required extended school year services. (*Id.*) Plaintiff's 2016 CAASPP results indicated he was "below standard" in reading and mathematics. (*Id.*) Plaintiff's 2015-2016 report card noted he needed reminders to focus during instruction, arrived unprepared, needed to complete work in a timely manner, *that he was reading at second-grade level*, and he was promoted to fifth grade but that intervention was recommended. (*Id.*) Plaintiff did not make adequate progress during the 2015-2016 school year. (*Id.*)

With respect to the 2016 to 2017 school year (fifth grade), Plaintiff's first trimester report card comments noted his reading fluency was "28/110" (it is unclear whether this was a word list or a reading passage with 110 words). (*Id.* at 17.) Plaintiff teacher noted he was making limited progress in all academic areas and *that he had a limited vocabulary*. (*Id.*) Plaintiff's second trimester report card comments noted *his fluency had dropped* to "24/131" (similarly uncertain with respect to what this means). (*Id.* at 18.) Plaintiff's teacher noted: "I'm sure if he decides to do better, we will see the desired improvement next trimester." (*Id.*) VCUSD's triennial Psychoeducational Assessment Report noted Plaintiff had average verbal abilities, average spatial abilities, and below average nonverbal reasoning abilities. (*Id.* at 19.) VCUSD's Academic Assessment Report indicated regression since 2014 in six subtests and *reading at a first-grade level*. (*Id.* at 19-20.) At the annual IEP meeting on February 28, 2017, the IEP noted Plaintiff met his reading comprehension at a second-grade level but this was not consistent with his academic assessment indicating reading at a first-grade level. (*Id.* at 20.) Plaintiff had not made positive growth since the first grade and his testing showed regression. (*Id.* at 21.) Plaintiff

required extended school year services. (*Id.*) Plaintiff's report card at the end of the year reported his reading fluency score was "18/139" (similarly uncertain with respect to what this means). (*Id.* at 21.) This was a regression from the beginning of the school year. (*Id.*) Plaintiff did not make adequate progress during the 2016-2017 school year. (*Id.* at 22.)

With respect to the 2017 to 2018 school year (sixth grade), at the annual IEP meeting on February 23, 2018, VCUSD placed Plaintiff in a special day class. (*Id.* at 23.) Plaintiff had not made positive growth since first grade and his testing showed regression. (*Id.* at 24.) Plaintiff required extended school year services. (*Id.*) Plaintiff did not make adequate progress during the 2017-2018 school year. (*Id.*)

Based on the foregoing allegations with respect to each school year, it is evident that Plaintiff knew or should have had reason to know about the facts forming the basis of his Due Process Complaint while he was at VCUSD. The ALJ provides an adequate summary of Plaintiff's allegations in total:

> On these facts, Parents attended IEP meetings, received report cards, and reviewed assessments with the IEP team. Parents observed, on a yearly basis that [Plaintiff] did not progress appropriately and that testing showed regression. On this basis, the face of the complaint alleges facts demonstrating that Parents knew or had reason to know of the facts underlying the basis of [Plaintiff's claims against VCUSD].

(ECF No. 1-5 at 6.) Accordingly, the Court finds that Plaintiff's parents knew or should have had reason to know about the facts forming the basis of his Due Process Complaint anywhere from *five to nine years* before Plaintiff ultimately filed it with OAH on April 28, 2023. (ECF No. 1 at 35.)

The Court finds the case law Plaintiff cites in support of his proposition that "a parent's awareness of underlying facts, such as receipt of reports and participation in the IEP process, does *not* demonstrate that their child required further assessment for other learning disabilities because some issues require specialized expertise a parent cannot be expected to have" to be inapposite. (*See* ECF No. 16 at 13.)

///

With respect to *N.N.*, Plaintiff contends the court addressed the "knew or had reason to know" discovery rule and noted that "the pertinent question in the matter was when the parent knew or had reason to know of the school district's alleged denial of a [FAPE] under the IDEA, *not necessarily when she became aware of student's condition or that the school district acted or failed to act*." (*Id.* at 9 (emphasis in original) (citing *N.N.*, 2022 WL 3109588, at *23).) Plaintiff appears to argue *N.N.* stands for the proposition that an individual "knew or has reason to know" of a school district's alleged denial of FAPE when he or she becomes aware "the school district could have assessed [a] student for special education" or when notified of "a right to request a due process hearing." (*Id.* at 10.) Plaintiff is incorrect. In *N.N.*, defendant contested application of the discovery rule and the court applied *Avila*'s standard, concluding the parties did not "seriously dispute" plaintiff mother "reasonably knew or had reason to know of [defendant's] alleged failure to provide [plaintiff student] with a FAPE by May 1, 2018," when she requested a special education assessment and had already consulted with an educational consultant and education law attorney. *N.N.*, 2022 WL 3109588, at *24. The court *does not* state the point at which an individual "knew or had reason to know" is when an individual becomes aware of the right to request a due process hearing or to be assessed for other learning disabilities, as Plaintiff seems to suggest. (*See* ECF No. 16 at 13.) In the instant matter, application of the discovery rule and the standards articulated in *Avila* are applicable and VCUSD does not contest application of this standard. (ECF No. 18 at 6.)

With respect to *Jessica E.*, Plaintiff argues again "the 'knew or had reason to know' date stemmed from the date the *parent knew of an alleged denial of FAPE*," and that some issues "require[ ] specialized expertise a parent cannot be expected to have." (ECF No. 16 at 10 (citing *Jessica E.*, 2017 WL 2864945, at *5–6).) It is true that the *Jessica E.* court notes that "whether a parent knew or had reason to know stems from when parents know of an alleged denial of FAPE, 'not necessarily when the parents became aware that the district acted or failed to act.'" *Jessica E.*, 2017 WL 2864945, at *7 n.3. However, VCUSD is correct that "there was, and continues to be, far more than the mere fact that Plaintiff's parents participated in the IEP process that supports the ALJ's decision," as

> Not only was there five years of IEP processes at VCUSD that Plaintiff's parents were involved in, there were also numerous assessments of Plaintiff showing lack of progress and regression, communications from teachers regarding Plaintiff's lack of progress and regression, and Plaintiff's own acknowledgement that each and every year he was at VCUSD, he did not make adequate progress.

(ECF No. 15-1 at 12.) Further, Plaintiff argued before OAH that his parents "did not know or have reason to know of these denials of FAPE before the 2021-2022 school year, when [they] worked with him closely while he was on independent study and discovered that he still had significant reading deficits even when his behavioral deficits were addressed." (ECF No. 1-3 at 8.) Plaintiff alleges in his Complaint that his mother moved him to an independent study program to see if that would enable him to attain passing grade, and she suspected Plaintiff's reading deficits were not due to attention as she provided him with one-to-one instruction. (ECF No. 1 at 31, 33.) It was only after this point that Plaintiff's mother requested that he be assessed for dyslexia. (*Id.* at 33.) First, by Plaintiff's own admission, his mother did need to have specialized expertise to ascertain that there might have been a denial of FAPE. Second, the Court finds that Plaintiff's parents do not allege that they learned any new facts through the process of the one-to-one independent study that they did not already know during the time Plaintiff was at VCUSD. Many years of report cards, standardized test scores, and IEP reports clearly demonstrate that Plaintiff was not making progress and had demonstrated difficulties specifically in reading and language.

Finally, with respect to *J.R.*, Plaintiff does not assert how the facts of the instant case are parallel to the facts in *J.R.* and just states that there was a "case that rendered a decision on this same subject." (ECF No. 16 at 11–12 (citing *J.R.*, 668 F. Supp. 3d 1054).) Plaintiff summarizes *J.R.*, noting the statute of limitations was tolled "due to the school district's failure to explain and disclose to parents information necessary to doubt [the school] district's improper diagnosis of student" and since autism was suspected, the school district's "failure to assess the student for autism resulted in denial of FAPE to student in violation of [the] IDEA." (*Id.* at 11 (citing *J.R.*, 668 F. Supp. 3d 1054).) Plaintiff also notes the ALJ in that case "failed to explain why the information parents had (regarding their child's diagnosis or lack of diagnosis) should have led

the parents to suspect their child required a further diagnosis or assessment." (*Id.*) The Court finds *J.R.* is inapposite to the facts of the instant case. Here, Plaintiff does not plead any facts of suspected disability that was consciously ignored by VCUSD. In *J.R.*, the school district failed to assess in all areas of *suspected* disability not all areas of *possible* disability. 668 F. Supp. 3d 1054. VCUSD is also correct that Plaintiff ignores the fact that he alleges FSUSD assessed him and identified him as having a specific learning disability on February 11, 2020, three years before he ultimately filed his Due Process Complaint. (ECF No. 18 at 7–8; *see also* ECF No. 1 at 27.) The Court agrees that *at a minimum* Plaintiff "knew or should have known" about the facts underlying his Due Process Complaint by at least that date.

*ii. Whether an Exception to the Statute of Limitations Applies*

The IDEA sets forth two exceptions to its statute of limitations. The statute of limitations does not apply to a parent if the parent was prevented from requesting a due process hearing because of: (1) "specific misrepresentations by the local educational agency that it resolved the problem forming the basis of the complaint;" or (2) "the local educational agency's withholding of information from the parent that was required . . . to be provided to the parent." 20 U.S.C. 1415(f)(3)(D); *see also* Cal. Educ. Code § 56505(1).

VCUSD asserts that "Plaintiff has not alleged and cannot allege any facts that VCUSD made any specific misrepresentation to Plaintiff's parents that it had resolved any problem forming the basis of the" Due Process Complaint. (ECF No. 15-1 at 14.) VCUSD also notes that "Plaintiff again also fails to explain what 'misrepresentations' and 'withholdings of information' were made that prevented him from filing a Due Process Complaint for the *five-year* period from when Plaintiff left VCUSD and when he finally filed the Due Process Complaint." (*Id.* (emphasis in original).) In opposition, Plaintiff again rests his argument on *J.R.* and argues VCUSD and FSUSD misrepresented to his "parents the extent of his disabilities, whether through intentional misrepresentation or omissions, which information related to [his] eligibility for special education as a student with a specific learning disability, including his characteristics consistent with a student who has dyslexia, dyscalculia, and dysgraphia." (ECF No. 16 at 16 (citing *J.R.*, 668 F. Supp. 3d at 1074–75).) Plaintiff contends VCUSD never assessed him for these deficits and

needs, and therefore his "parents were left to rely upon the purported expertise" of both VCUSD and FSUSD, "which in turn, prevented them from requesting a due process hearing, thereby tolling the statute of limitations since 2013." (*Id.* at 16–17.)

Here, the Court finds that Plaintiff's Complaint does not allege facts sufficient to establish that his parents were prevented from filing a Due Process Complaint because of VCUSD's "specific misrepresentations" or a "withholding of information." *See* U.S.C. § 1415(f)(3)(D). In *J.R.*, the court found the ALJ erred by rejecting plaintiff student's argument that defendant school district misrepresented and/or withheld its findings regarding "its obligation to assess in all areas of suspected disability," thereby tolling the statute of limitations. 668 F. Supp. 3d at 1073, 1075. The court concluded that defendant school district "did not disclose, but knew, that best practices required further assessment [for autism] as early as 2012," and that defendant school district "was required to explain why it did not suspect autism even though reliable scientific methods indicated this conclusion was, at the very least, premature." *Id.* at 1074–75 (emphasis omitted). The court noted that these reports "omitted key information" that prevented student plaintiff's parents from suspecting autism and, even worse, another report "specifically misrepresented that [defendant school district] had appropriately assed J.R. for autism and concluded that he did not have it." *Id.* at 1075 (emphasis omitted). The court stated, therefore, even if plaintiff's parents began to suspect scores on the tests used to measure autism spectrum disorders "required further assessment, they were reasonably led to believe such assessment had taken place." *Id.*

In contrast, Plaintiff does not allege that VCUSD made specific misrepresentations that it resolved the problem forming the basis of his Due Process Complaint (his specific learning disability), nor does he allege VCUSD withheld information from his parents that was required under the IDEA to be provided to his parents. (*See* ECF No. 1.) Plaintiff alleges the following in his Complaint with respect to either a "withholding of information" and/or a "material misrepresentation" of the extent of Plaintiff's learning disability:

- <u>2013-2014 School Year</u>: "By failing to provide either accurate present levels of performance, or appropriate goals, including in the areas of phonemic awareness and reading decoding, it was not possible for [Plaintiff's] parents to have adequate information

upon which to be informed members of the IEP team." (*Id.* at ¶ 49.)

- 2014-2015 School Year: "Because [VCUSD] did not provide [Plaintiff's] parents with adequate information concerning his present levels of performance and actual reading abilities, they did not know the extent of his learning disability. In addition, [VCUSD] personnel consistently reported to [Plaintiff's] parents that his deficits were due to an attention issue and did not report the learning disability." (*Id.* at ¶ 63.)
- 2015-2016 School Year: "On February 26, 2016, [VCUSD] convened [Plaintiff's] annual IEP team meeting. [VCUSD] continued to assert [Plaintiff's] difficulties in reading were due to attentional issues . . . [Plaintiff] had a significant learning disability, but his parents were not informed of this." (*Id.* at ¶ 69.)
- 2016-2017 School Year: "[Plaintiff's] teacher reported that he was making limited progress in all academic areas and that he had a limited vocabulary. Moreover, [Plaintiff] was blamed for his academic deficits, with his teacher noting that 'once he can focus and concentrate on his learning tasks and takes his studies more seriously, we will see improvements in his academics.'" (*Id.* at ¶ 84.) "His teacher noted, 'I'm sure if he decides to do better, we will see the desired improvement next trimester.'" (*Id.* at ¶ 87.) VCUSD's triennial Psychoeducational Assessment Report was "inadequate," as it "failed to consider whether there was another cause for [Plaintiff's] inability to read, aside from attention deficits." (*Id.* at ¶¶ 88–91.) "[VCUSD's] failure to conduct an adequate assessment was itself a material misrepresentation of [Plaintiff's] needs." (*Id.* at ¶ 92.) Plaintiff's "teacher again blamed him for his lack of progress, noting that he 'needs to improve his attitude towards school and his studies. School is fun but it is not all play. Most importantly, he needs to be more organized, motivated, and want to learn to be successful in middle school.'" (*Id.* at ¶ 107.)

The Court does not find that these statements by Plaintiff's teachers or VCUSD amount to a "material misrepresentation" or a "withholding of information" regarding his learning disability. It appears from Plaintiff's allegations that at times Plaintiff's teacher stated that if he were to work on his attentional issues, there would be improvements in his academics. However, Plaintiff

does not allege that at any point his teacher or VCUSD represented to him or his parents that his attentional issues were the *sole cause* of his academic regression and/or failure to progress. As stated previously, Plaintiff's parents had many years of report cards, standardized test scores, and IEP reports to clearly demonstrate that Plaintiff was not making progress and had demonstrated difficulties specifically in reading and language. Further, VCUSD is correct that Plaintiff has not alleged "any facts of any withholding of information that VCUSD was required to provide that resulted in Plaintiff's parents being prevented from filing a Due Process Complaint." (ECF No. 18 at 9.) The Court therefore finds that neither of the exceptions under the IDEA to toll the statute of limitations applies in the instant matter. *See* 20 U.S.C. 1415(f)(3)(D); *see also* Cal. Educ. Code § 56505(1).

Based on the foregoing, the Court GRANTS VCUSD's motion to dismiss Claim One. The Court has serious doubts as to Plaintiff's ability to allege further facts to establish one of the foregoing exceptions to the IDEA's statute of limitations. However, given the liberal standard in favor of granting leave to amend, the Court cannot definitively state at this juncture that amendment would be futile. *See Lopez*, 203 F.3d at 1130. Accordingly, the Court will grant leave to amend on Claim One.

*iii. Consideration of the Issue in Connection with an Evidentiary Hearing*

VCUSD asserts that Plaintiff contends, without citation to any supporting law, "that the ALJ 'was required to weigh the evidence on the statute of limitations issue at an evidentiary hearing.'" (ECF No. 15-1 at 15 (citing ECF No. 1 ¶ 232).) VCUSD contends there is "simply no law that requires an ALJ to conduct an entire evidentiary hearing to find facts that Plaintiff has already [pleaded] in his own Complaint." (*Id.*) Plaintiff does not address this issue in its opposition (*see* ECF No. 16) and therefore concedes the argument. The Court therefore declines to address this argument.

C. Claim Two: Violation of § 504 of the Rehabilitation Act

VCUSD argues Plaintiff's § 504 claim will have the same "knew or had reason to know" standard applied to determine the statute of limitations accrual date, and therefore the same

analysis applicable to the IDEA claim is applicable to the § 504 claim. (ECF No. 15-1 at 16.) VCUSD contends that because Plaintiff failed to file within two years of the date his parents knew or had reason to know of the facts supporting the basis for his claim, the § 504 claim fails too. (*Id.*) Plaintiff does not address this issue in its opposition (*see* ECF No. 16) and therefore tacitly concedes this argument as well.

Based on the foregoing, the Court GRANTS VCUSD's motion to dismiss Claim Two. Because the Court finds that amendment would be futile, Claim Two is also dismissed without leave to amend. *See Lopez*, 203 F.3d at 1130; *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).

## IV. CONCLUSION

Based on the foregoing, the Court hereby GRANTS VCUSD's motion to dismiss (ECF No. 15) with leave to amend. Plaintiff may file an amended complaint, only to cure the deficiencies addressed in Claim One, not later than thirty (30) days from the electronic filing date of this Order. Defendants shall file a responsive pleading not later than twenty-one (21) days from the filing date of the amended complaint. If Plaintiff opts not to amend the complaint, the Court will dismiss the action and close the case.

IT IS SO ORDERED.

DATE: September 30, 2024

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE